This case involves claims that target speech that relates to a public figure who is in her own words, quote, a subject of public interest and someone of, quote, widespread attention and interest. The speech not only relates to that public figure, but to the infusion into our public discourse of the catchphrase and the tritely used phrase, that's hot. The facts that mandate reversal of the district court's ruling and dismissal of this action on the grounds of First Amendment are undisputed. Indeed, they are facts alleged in the complaint or incorporated by the complaint. The law that compels dismissal is equally clear, and the process to apply that law, this California Supreme Court has said. You said facts are undisputed. We're talking about a greeting card. Yes. That's the fact, right? Or is there something I'm missing? Well, a couple of facts are undisputed. The fact of what the greeting card says and what its content contains is undisputed. It's Exhibit 1 to the complaint. The fact of her public figure status is undisputed and admitted numerous times in the complaint and in the briefing here. And the fact of what she looks like in real life is undisputed and admitted. And her appearance in the Simple Life episode, incorporated by the complaint, made a part of the complaint here. So the facts that the Supreme Court in California said are enough to resolve the First Amendment issue. I'd like to ask you about who, to begin in your brief, you say the writer, employee of Hallmark, who wrote this message, had something in mind. Now, his First Amendment rights at stake or Hallmark's? Well, Hallmark's is, of course, the name of the defendant here. But the writer was thinking, what's the evidence as to what Hallmark was trying to communicate? Well, there's no evidence in the record of what Hallmark is trying to communicate, and nor is there a need. Well, then how does it have a First Amendment right? Because the speech in the card can speak for itself. Well, no, but somebody has to speak. Cards don't speak. People speak. Companies speak. People are speaking. The cases have said corporate speakers can be considered the speakers for purposes of First Amendment analysis. So now you're saying it's Hallmark's speech? Certainly, yes. We've always been saying that it's Hallmark's speech. You say it's the writer's in your brief. I read a whole page on how the writer had framed this, and it's his thought. I don't believe we've said that. Well, you did. Okay. Well, certainly there's an artist, and that issue was specifically addressed in the ETW case. You'll see there's a reference to the fact that the corporate entity that distributes the speech steps into the shoes of the artist for purposes of First Amendment analysis and becomes the speaker for purposes of First Amendment analysis. So I think that applies here. And to apply that analysis, it's a simple and, the Court has said, not difficult process. In Winter Brothers, the Court said, quote, The Courts can often resolve the question as a matter of law simply by viewing the work in question and, if necessary, comparing it to an actual likeness of the person portrayed. If taking those two things, the carded issue, comparing it to an actual likeness, again, facts that are undisputed, if the Court determines it's not a conventional depiction, meaning literally it doesn't depict plaintiff literally, rather has its own expressive content, then the use is protected under the First Amendment and the claim fails. Now, she was in a television series where she appeared as a waitress. So how did that transform the way she had appeared in public? Well, a couple of points, Your Honor. First of all, the episode, again, is in the record and can be reviewed by the Court. She appeared as a fast food hostess at a fast food joint. And if you watch that episode, her depiction in that episode is very different from how she's depicted in the card. What's the difference? Well, a number of differences. First of all, she's not a waitress in a sit-down diner in the episode. She's a fast food car hop. Second of all, she's not serving patrons who are sitting down at a table. Third of all, she has nothing like the dialogue with any patron that's contained in the card. That's an entirely unique, separate expression that's never been repeated anywhere else. Third of all, her phrase, that's hot, is mocked or is used in a creative, different way to make fun of that phrase and its normal import to her, which is desirable and attractive versus literally, watch out for the plate, that's hot. So there's a vast amount of differences. You've really left me behind, but use your hyperbole as you choose. But more importantly, Your Honor, whether there is some similarity between those is irrelevant for the First Amendment analysis. In fact, we are entitled to parody well-known settings. You are arguing transformative. It's hard to see any transformation. Well, unless Paris Hilton, and I'm not aware of this, has a cartoon body, I think this is a transformative drawing. In fact, if you look at this Court's holding in Hoffman, this Court held that the Hoffman image. Hoffman is not an anti-Sype case. No, but talking about First Amendment analysis. Well, it is, but it was after a trial and was not cutting the trial off. Well, but. You rely a lot on Hoffman, and it seems to me irrelevant to this proceeding. Well, the reason why I think it's very relevant, Your Honor, is that if you look at the holding of transformative use that this Court reached in Hoffman, the Court reached that based on comparing the images, the two images. It didn't rely on any outside facts, anything obtained through discovery, nothing of that nature. It simply said, let's look at the Tootsie image. Let's look at what L.A. Magazine did. Okay, Tootsie, it's a red dress, and it's different. It's a great thing over here, but it's not this case. Well, I submit the relevant First Amendment portions are very applicable and controlling here. Since Hoffman, we've had a number of other decisions that I think support the First Amendment conclusions here. We've had ESS Entertainment by Judges Scanlon and Graber just recently, a few months ago. The Mattel line of cases versus MCA and versus Walking Mountain, New Kids on the Block, Leed-Holt, which was not addressed in their briefing, and even for that matter, Downing I think supports the First Amendment dismissal in this case. In addition, you've got Comedy 3, Cartoons, Tiger Woods, Kirby, Daily, Dora, a number of these decisions not even addressed in this Hilton's briefing. Now, the mistakes that were made by the District Court are not many. There are a few, but they were made. The first mistake made by the District Court, the first error of law, was on the first prong of the anti-SLAPP statute itself. There's not much to the District Court's analysis, but to the extent there was analysis, it was an error. You have to keep in mind what happened in the District Court below. In response to Hallmark's motion, Hilton conceded that she was a subject of public interest. There was no debate whatsoever by her that she was a subject of widespread public interest. What she did was she said the SLAPP statute doesn't apply at all in its entirety because this is, quote, commercial speech, as she argued. And her only argument was that it's commercial because the card is sold. Well, what does the anti-SLAPP statute say? What are the words of the anti-SLAPP statute? The anti-SLAPP statute says that it will apply to claims that relate to speech in connection with a public issue or an issue of public interest. What's a public issue? The courts have held that there are three, at least three categories, that things will be considered a public issue. And I'm quoting directly from California courts. One, statements that concern a person or entity in the public eye. Courts have said a number of times that that definition, the public interest definition, includes any statement that concerns a person or entity in the public eye. That's conceded here. You haven't said that in the California Supreme Court.  Is there a decision of the California Supreme Court? I think there's the Rivero decision, but that is a California Court of Appeal decision. I don't know if there is a California Supreme Court decision. I think you do. Now, I've not done an exhaustive inventory, but the cases that leap out of your brief are CAL-AP cases. And, you know, CAL-APs go all over the place. Well, they're what we have, Your Honor, because there aren't that many. I know, but they're not very persuasive. They're not decisive. Well, they're certainly the expression of the government. And they depart from the statute, which speaks of a public issue. Well, I don't agree, Your Honor, that they run a scant of the statute. The public interest is the same as public issue. If a legislator wanted to have people talk about everything, gossip about them, sure. They could have enacted a law. But they didn't. They wanted to preserve debate on issues, that is, in the political realm. They didn't want gossip about celebrities. Actually, that contention that the statute was limited to discussion in the political realm was specifically rejected by the California legislature when they amended the statute to say that public interest and public issue had to be construed broadly because there was a case called Did they say public interest? Yes. The statute says public issue or an issue of public interest. There was a case called Zao that had made the exact same argument. Are you quoting the statute, or what are you quoting? I'm quoting the statute verbatim. All right. Quote it. Okay. The statute verbatim says, it says, Conduct in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or an issue of public interest. And the Zao case had held exactly what Your Honor just said. Oh, this is just about political speech. It's not about these other things. And the California legislature specifically amended the statute and said, Zao is wrong. That's not what we meant. We meant this term to be construed very broadly, and it shouldn't be limited in that manner in which you've just suggested, that it should apply to all kinds of things. And the courts have applied it to various things, particularly involving celebrities of great national interest or of tremendous public interest. In the Hall case, that was a commentary that related to Marlon Brando, and the court talked about how there's such a great interest in Marlon Brando. In the Cronemeyer case, that was a case simply in which the plaintiff said, You've got to include me with a producer credit for a movie on your IMDb website, and it violates my rights that you don't. And the court said, Including someone's name as a credited producer for a film is a matter of public interest. In Nygaard, the court specifically looked at the issue of whether information about celebrities falls under the prong, and they analyzed the legislative history. They analyzed the cases and said, Yes, exactly this is what the legislature intended. They looked at legislative history. This is what they intended, that public interest was, quote, any issue in which the public is interested. And in that case, they said a celebrity of Finnish extraction, someone who was very famous in Finland, who there was an extensive interest in, that fell under the statute. The Seelig case involved a celebrity. The Engel case involved a celebrity. All of those cases, by the way, Hall, Nygaard, Seelig, Engel, Cronemeyer, all five of them ignored entirely by Hilton in the briefing. You will not see a single mention of those cases. And there is, in fact, statute cases that have said, Failure to address authorities can be deemed a concession, that they're fatal to you. Counsel, you're down to two and a half minutes. You said you wanted to reserve some time. I will do so, Your Honor. Thank you. We'll hear from the other side. May it please the Court. Brent Blakely for Paris Hilton. I'd like to pick up where Mr. Banlow left off. Those cases that Mr. Banlow just cited, the Brando case, the Nygaard case, they did involve people who were well-known, but they also involved issues in connection with those people, something you do not have here in this case. In Brando, the issue was his distribution of assets. In other words, there was a lot of talk in the press and a lot of interest. That was the situation where a reporter went and talked to the ex-housekeeper about how Brando, you know, the distribution of assets, what was going on with his will. It wasn't just about, okay, Marlon Brando is famous and, therefore, it falls within the statute. There was an issue involved there. Same thing with Nygaard. The Finnish person was well-known, but the issue was that was getting a lot of debate was his ownership of an island in the Bahamas. And the same is true for all the other cases they cite in their brief. There was an issue intended to the celebrity or well-known person's identity. Well, what's your comment on the amendment that the legislature made that he referred to? Your Honor, the amendment, as you made counsel read, said an issue of interest. It did not say a person or a celebrity of interest. An issue of interest. Can you quote that? I don't have the statute in front of me. I heard him say it. It is an issue of interest. As I heard him, he said public issue or interest. Or issue of interest. We'll pin that down. I don't want to have something misquoted. How would you have us define issue with reference to what California courts have done? We're applying California law here, right? Yes, Your Honor. And so the only thing that matters is for us to understand what we would guess the California Supreme Court to say based on what the intermediate courts have said so far. So what do they tell us the word issue means? There has to be an ongoing issue of public debate, Your Honor. In other words. It doesn't say debate. It says interest. So people can be pruriently interested in all kinds of issues. From the sex lives of stars, that's an issue. You know, how promiscuous should people be allowed to be? You could call that an issue. So how do you limit what issue means? Your Honor, it has to be, there has to be an issue that is in the public debate that the public is interested in. An actual issue. Not just a person. Not just a general interest in a celebrity. And IMG went into detail in their brief on this. The statute does not state that. Why wouldn't the issue be how do people who have led a privileged life cope with ordinary life? How do people cope with changes in their circumstances in these difficult economic times? I mean, one could make an argument that that's the issue broadly stated that this is parodying. So, I mean, can't almost anything be described as an issue? No, Your Honor. I have still yet to understand or have it expressed what exact issue that they are trying to get across other than by these greeting cards. And here is a picture of Paris Hilton in a situation almost identical to a role she played in a TV show a few years prior. I don't know what public issue or debate they are trying to forge. There's no ongoing issue about Paris Hilton playing a role in the simple life several years ago where she was a waitress. They have not expressed an ongoing issue. Well, to what extent do we take into account the fact that millions of people have gone to the movies either to see something like that or in particular, in this case, seen the video, seen the TV show? I think just because someone enjoys or is interested in a TV show doesn't make it suddenly an issue of public debate, Your Honor. If that were the case, then as we argued and as IMG argued, any person who is well-known, any company who is well-known is going to be subjected to an anti-SLAPP statute. Where do you get the word debate? You keep using the word debate. I don't see it in the statute. I think it's coming from the charm. It says interest, public interest, doesn't it? I think it needs to be an issue, an ongoing issue. But debate doesn't play into it. I think the charm talks about debate also. But, again, the cases, all the cases upon which Hallmark relies upon, there is an ongoing issue. It's not just about, okay, a celebrity is famous and, therefore, they're subject to an anti-SLAPP motion any time they file a lawsuit. And I think that's very clear from the case law. I think it has to be an issue that is ongoing. But, really, to get to the heart of- Well, let's get to the transformative issue, if we can. Why isn't this closer to the Tootsie case or Hoffman than it is to the three stooges where you're just seeing the actual image with nothing else? And, again, this is one of the factors of the transformative test, which is, again, just the California Supreme Court way of trying to figure out how to deal with this conflict between the First Amendment and the right to publicity. And this was distinguished by the court in Downing as well, is that Hoffman, it wasn't directly related to a commercial transaction. I don't understand that. The L.A. Magazine was trying to sell magazines just every bit as much as Hallmark is trying to sell greeting cards. They weren't doing it for free. And, again, Your Honor, in Hoffman, again, the use was in connection with the clothing that was being advertised. And the Downing court distinguished that use. This case is much more akin to Downing, much more akin to Comedy 3, particularly with regard to this transformative context, where the primary purpose of the median is to sell a product. There's nothing transformed here. And, again, that, again, Your Honor, is really the thrust. Well, her likeness is transformed significantly. Well, under their analysis, if you put stick figures under the three stooges, each of the three stooges, then they were that way. Well, that might have been a different result. We don't know. Certainly that might have been a different result, because that's really what the Hoffman case was. It was his face on a different body. This is her face on a different body, very different. Your Honor, this case is an actual literal depiction of Paris Hilton in the context of a role that she played in a TV show. In Hoffman Tootsie, they took her image, or Dustin Hoffman's picture, and put it on top of various outfits that would have been... They put it on another body, just like they put her photograph on another body. Right. But here they're selling cards. In Hoffman, it was a magazine, Your Honor. What difference does that make? They're both commercial transactions, are they not? Your Honor, in this case, no. Commercial enterprises, magazines. In this case, the use is directly related to selling a product. And again, Hoffman was not an anti-slap case. Well, that's certainly true, but in terms of the First Amendment analysis versus the right of publicity, why doesn't it suggest that there's a clear legal result here which has some bearing on the anti-slap analysis? The anti-slap statute, and again, this is the fallacy of their whole argument, the anti-slap statute says that there is no weighing of the facts. And as this Court, as Judge Noonan stated in Midler, and as this Court has stated in Wendt and Downing and numerous other cases, when the right to publicity comes into conflict with the First Amendment, there is a weighing of facts to determine whether the primary purpose is to send a message or to sell a product. Clearly, Your Honor, Hallmark is in the business, and everything it does, just like Abercrombie & Fitch does, is directed towards the goal of selling a product. And when they tried to make these same arguments and they tried to wheel out Hoffman in that case, Your Honor, as Judge Fletcher aptly stated, and I quote, give me a break, this is all about selling a product, Your Honor. They are selling greeting cards. And to the extent that that ---- There was nothing being sold in Hoffman? It was not. The very back end of the magazine says, oh, if you want to buy these outfits, you can buy these outfits. In this case, you cannot ---- We can't ---- we have to ignore the fact that it's the magazine itself that's being sold by virtue of this attractive concept. That's more ---- that runs more into like the Montana line of cases and similar cases. This is not that case, Your Honor. They are selling a product. They are selling merchandise. This is not a newspaper that happens to ---- This is not a newsworthy situation where, you know, and again, in Downing, they were arguing that it was newsworthy, which was a higher level of protection than certainly parodies are. And that was rejected because they said the primary purpose in that situation was to sell merchandise. And that is clearly that not only is the primary purpose, it's the only purpose that's really been expressed in this case. We've, you know, I ---- other than just simply copying what Paris Hilton did, I mean, people are buying that card because Paris Hilton's face is on it. That's it. They're buying it because it's funny, because it has a message. People buy greeting cards so that they can send a message, not so that ---- I mean, sometimes they send only artwork and put in their own message, but the artwork also is a kind of message. And, Your Honor, as the courts have felt, if Groucho Marx is funny, and if they took Groucho Marx and did a turn of his phrase on ---- that has been rejected. You can't just simply ---- again, you can't just take someone's persona and use it to hawk your merchandise. And that is exactly what is going on here, Your Honor. And again, that ---- and this goes to another factor. What this case is directed for, this is not a privacy case. This is not trying to suppress some sort of speech. This is a publicity case. In other words ---- It's about who gets to profit from using her image. Exactly, Your Honor. We are ---- this case is not ---- the grabment of this case is not directed at suppressing their free speech rights. The grabment of this case is to make them pay for the commercial misappropriation of my client's image. It fails for that as well. But again, fundamentally, Your Honor, this is an anti-slap case. As Judge Anderson has stated, and as other judges have stated, this isn't just Judge Anderson. I think Judge Plowser just denied their anti-slap motion in Jackson Brown v. John McCain that Mr. Brett Banlow brought. It's 2009, Westlaw 483212, which involved campaign ads. These are questions of fact, Your Honor. There's no weighing. In fact, all the facts have to be weighed in favor of Hilton at this stage of the game. Clearly, we have met a prima facie case that these cards could be primarily for the purpose, for a commercial purpose. And thus, the anti-slap motion fails. Now, they can bring up these issues in summary judgment. They can bring it up at trial. But at this stage of the proceedings, the motion fails. If it were otherwise, there would be an automatic immunization anytime someone could cloak a misappropriation in some sort of newsworthy or parody context. And they can try and sugarcoat it any way they want. But that is exactly what they're arguing. If any case that the First Amendment bumped into a parody, you would have a granted slap motion. It would basically abrogate 30 years of jurisprudence on the right of complicity. But again, Your Honor, there is binding precedent from this Court. Again, 21 years ago in Judge Noonan's decision in Midler, moving forward to Wendt, Newcomb, and all these other cases. And I think, you know, I think Judge O'Scanlan stated it best in the Dr. Seuss case. In a case where the parody is no defense, where the purpose of the similarity is to capitalize on the famous mark's popularity for the defendant's own commercial use. Well, that's what we have to sort out in this case, do we not? That is exactly what's going on, Your Honor. And there is a question of fact group. It's not necessarily that clear cut. That's why the facts need to develop. That's why I need to have an opportunity to take depositions, to find out who this mysterious artist is and what quantum of work he put into this. What his marching orders were from the higher ups at Hallmark. You know, there are issues of fact that need to be sorted out in this case, Your Honor. And clearly, I think that in a lot of these cases argued in summary judgment context, I think this is ultimately an issue a jury needs to decide. Is this primarily informative or is it primarily to sell greeting cards, a commercial purpose? And as all that case law and authority has stated, there's a weighing process that needs to be involved there. Is your ultimate goal to get money or an injunction? Money. They've done it. I mean, it's, you know, it's Ms. Hilton makes a living endorsing products, a large part of her living doing that. And if what if they can get away with what they did, that will you know, that is what you know, just like it basically be like people not having to pay for merchandise in the store. Is what they're doing here. Mrs. Ms. Hilton is it brought this lawsuit to get compensated for the commercial theft of her image without her permission. We understand counsel. Thank you very much. Your time has expired. Mr. Bandwell, you have some reserve time. Thank you, Your Honor. I try to use it quickly. There's a lot to address in what he said. Unfortunately, a lot of it that is incorrect. Just Judge Graber, you're correct. There is no debate requirement. In fact, the Ducharme case that he talked about is a very limited case that says if the speech relates to entirely private people and is private interactions between two private people, then maybe you need to show an ongoing debate. But that is an exception to the broader rule that anything relating to a public interest. But the anti-slap statute isn't fully coextensive with the First Amendment. No, it is not. So you do have to meet whatever those statutory requirements are. Sure. And here we have a matter of public interest, not simply just because she's a celebrity. And that's not what we're advocating here. Well, it says issue of public interest. Yes, issue of public interest. You have to find the issue first. Yes, and the issue is the effect of celebrities on our public discourse and on our... You frame that as an issue. You're giving it as a topic. An issue means slavery. Slavery is an issue. Abolish it or keep it. Yes. What's the issue here? The public issue is the effect of celebrities and their attempt to modify our conduct and the way we act. The Comedy 3 case... These are attempts to modify our conduct? The Comedy 3 case says specifically. Let me read you the relevant language. It says celebrities are the leading players in our public drama. We tell tales, both tall and cautionary, about them. We monitor their comings and goings, their missteps and heartbreaks. And here are the important language. We copy their mannerisms, their styles, their modes of conversation. That's what this card does. It parodies her mode of conversation. Wasn't that thrown out? I'm sorry, what? Wasn't your attempt to copyright That's Hot was thrown out, wasn't it? Well, that's her attempt. She attempted to register. She obtained it. That's thrown out, but that's not an issue. That claim was thrown out by the district court, yes. Now, getting back, in fact, this court, the Ninth Circuit, has used Paris Hilton as a communicative resource itself. In the U.S. v. Jarnigan case, a case from 2007 from this court, it was talking about a criminal case and whether a videotape identified one of the bank robbers. And it was a grainy tape. And the court said that it no more identified the defendant than it did Paris Hilton. The reference there being to her grainy sex tape that was released and she's somewhat infamous for. Other courts have said people are free to shop like Paris Hilton. Paris Hilton is a metaphor. She is herself a message. And that makes her a matter of public interest. Now, just to address a few of the And it doesn't make her an issue of public interest. And that's what the statute requires. But speech about her is. So any speech about her could be the subject of an anti-speech? Not necessarily, no. But speech that certainly relates to her attempts to modify our culture, to change our vocabularies, to change. Let me ask you this. What remains in California of a celebrity's right of publicity or a right to make money out of their fame? If anybody can comment on them and say, well, we've got a First Amendment right to use your name. It depends on how they do it. And it distinguishes all of the cases that he relies on. He did in his briefs. And Judge O'Scanlan in the Comedy 3 versus New Line Regency distinguished those cases and said, it's one thing when you use a celebrity to sell a separate product, to sell clothes in Downing. And not waiting times? No, because the speech is the product. Like the magazine is the product. Like the video game, ESS Entertainment, is the product. When the product is the speech and not Doritos, VCRs, cars, something different. He talked about how she makes a substantial living endorsing products. She's still free to do that. If she wants to endorse perfume and Doritos and VCRs, no one's stopping her in this claim. And the law here doesn't stop her. This is when a speaker decides to comment. Why isn't this the subject for a full-blown trial or at least a summary judgment where there are facts developed? Why is this the subject of a preclusive motion? Why is that the permissible answer where the issue is not clear-cut? Well, because as a matter of law, the court in Comedy 3 and the court in Winter Brothers have said that to apply the transformative use test, you really just need to have the two works and to be able to compare them. And in fact, Winter Brothers made a specific point in that opinion of saying, this can be done on demur. It can be done early. And in fact, in light of First Amendment interests, if you have a claim that relates to protected speech, it should be done early so to avoid subjecting speakers to the burden of a trial when the facts that are dispositive are admitted by all parties. They are here. Well, if that's true, I mean, it proves too much because if it's that easy, then the trial will be that easy also. If there are only a few dispositive facts, then there's not going to be a very painfully long discovery and trial. Well, but they're going to seek all kinds of discovery relating to damages, issues, all the other things. I think the district court's well able to take care of those problems, isn't it? I don't believe they are. And even just having to deal with the court taking care of that problem is what this court has said the anti-SLAPP statute was designed to help parties avoid. If there is a case that legitimately is aimed at speech, the parties should be able to avoid any of that. That's what the SLAPP statute was devised for. That's why this Court in Batsell and numbers of other cases have said we need to vigorously apply it. We need to broadly construe public interest, as this Court has said. So avoiding that is really the issue. Last few things because he said so many things. Counsel, your time is you're over time, but finish your last point. Let me just finish with one last point. He mentioned repeatedly the primary purpose. That's not the test here. The test is a transformative use. As you said, this is Hoffman. This is not Downing. And this is not Comedy 3. That was quite literally a depiction of them. The Court repeatedly said portraiture in that case. If you flip and that image is in the record of those three stooges, you could flip past that and think you were looking at a photograph. You can't do that here with a card. It's transformative. Thank you. Thank you, Counsel. The case just argued will be submitted for decision, and the Court will adjourn. All rise. Hear ye. Hear ye. I'll call the time ahead for decision for the Sonneville Court. The Sonneville Court, where this Court stands adjourned.
judges: Noonan, O'scannlain, Graber